UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 08-188 |
| JASON FLOWERS | * | SECTION "G" |

**MEMORANDUM IN SUPPORT OF SENTENCE REDUCTION PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018**

**NOW INTO COURT**, through undersigned counsel, comes defendant Jason Flowers, who respectfully requests a reduction of his sentence pursuant to Section 404 of the First Step Act of 2018.  For the reasons discussed below, the defendant respectfully requests that the Court impose a reduced sentence for his conviction on Count 1 of the superseding bill of information.

**I.    Introduction.**

Jason Flowers is 42 years old, and is currently scheduled to be released on October 4, 2029,[1] when he is in his 50s.  He has been in prison for over 11 years, during which time he has completed numerous courses offered by the Federal Bureau of Prisons.

Although he technically qualifies as a career offender and faces the same Guidelines range that he did at his original sentencing, the United States Sentencing Commission has advised against the strict application of the Career Offender Guideline to people like Flowers, whose classification is based solely on drug-related offenses.  Without that career offender status, Flowers would face a Guidelines range of 84 to 105 months, restricted to

---

[1] Since preparation of the eligibility information sheet, the defendant has qualified for additional good time credit and his release date has advanced from January 22, 2030, to October 4, 2029.

120 months on Count 1 due to the statutory minimum. For these reasons, in addition to a number of other mitigating circumstances discussed below, Jason Flowers respectfully submits that a sentence reduction is appropriate in his case notwithstanding the elevated Career Offender Guideline range.

**II. It is undisputed that Jason Flowers is eligible for a sentence reduction under Section 404 of the First Step Act, and his statutory minimum is 120 months.**

There is no dispute that the defendant is eligible to receive a sentence reduction under Section 404 of the First Step Act of 2018. On March 11, 2009, he pled guilty to conspiracy to possess with the intent to distribute 50 grams or more of cocaine base. He was sentenced based upon the statutory penalties under § 841(b) that were in effect prior to the Fair Sentencing Act, facing a statutory minimum sentence of 20 years, due to the filing of a sentence enhancement under Title 21 USC § 851. Thus, Flowers was previously sentenced for a "covered offense."[2] He never received a sentence reduction in accordance with the Fair Sentencing Act amendments, and this is his first motion for a sentence reduction under Section 404. Therefore, he is eligible for a sentence reduction under the statute.[3]

At his original sentencing, Jason Flowers was classified as a career offender under U.S.S.G. § 4B1.1 based upon two prior drug convictions from over 22 years ago, when he

---

[2] *See* First Step Act, Sec. 404(a).
[3] *See* First Step Act, Sec. 404(b), (c). Additionally, this matter was reviewed by the 1stSA Committee, created by Chief Judge Nannette Jolivette Brown's General Order of January 29, 2019. The Committee determined that Jason Flowers is eligible to receive a sentence reduction.

was 19 and 20-years-old.[4] Because his statutory maximum sentence was life imprisonment, his resulting Guidelines range was 262 to 327 months.[5] The Court sentenced him to a 288-month term of imprisonment.

It is undisputed that this Court has the authority to reduce Jason Flowers' total sentence to as low as 120 months, because his current statutory minimum for Count 1 is 120 months.[6] The Government opposes a reduction based upon the fact that Flowers' Career Offender Guideline range remains at 262 to 327 months, and his post-conviction conduct.[7]

### III. A below-Guidelines sentence reduction is appropriate in Jason Flowers' case.

At 42 years old, the defendant already has been in prison for over a decade.[8] He currently is scheduled to be released in 2029, when he is in his 50s. All parties agree that this Court should consider all of the § 3553(a) factors and also may consider Flowers' post-conviction conduct in determining whether, and by how much, to reduce his sentence in this proceeding.[9] As discussed below, Jason Flowers' current sentence is longer than

---

[4] *See* PSR at ¶¶ 97 and 100; *see also* PSR at ¶ 93.
[5] *Id.* at ¶ 145.
[6] *See* Government Memorandum in Opposition to Sentence Reduction, ECF No. 832, at 3 (Dec. 18, 2019) ("Gov't Memo").
[7] *See* Gov't Memo at 6-7.
[8] *See* PSR at p. 1 (indicating that Flowers was arrested on November 10, 2008).
[9] *See* Gov't Memo at 5-6; *see also* ESP Insider Express Special Edition: The First Step Act of 2018, U.S. Sentencing Commission, Office of Education & Sentencing Practice, p. 8 (Feb. 2019), *available at* https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (advising that the First Step Act "made no changes to 18 U.S.C. § 3553(a), so the courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing"); 18 U.S.C. § 3582(a) (directing courts to consider the § 3553(a) factors "if a term of imprisonment is to be

necessary to comply with the statutory sentencing goals, and he respectfully submits a reduction is warranted in light of the totality of the circumstances in his case.

> A. The U.S. Sentencing Commission advises against strict application of the Career Offender Guideline to non-violent offenders like Flowers.

The Government's opposition to a sentence reduction in this case is based primarily on the defendant's Career Offender Guideline range, which remains unchanged following the implementation of the Fair Sentencing Act since his statutory maximum for Count 1 remains at life imprisonment.  Importantly, however, recent, data-based guidance from the U.S. Sentencing Commission advises against the strict application of the Career Offender Guideline to Flowers, because his classification is based solely on prior drug offenses. This guidance weighs in favor of a reduced sentence toward Flowers' non-career offender Guideline range, which would be 84 to 105 months, restricted to 120 months on Count 1 due to the statutory minimum.[10]

---

imposed"); *United States v. Bean*, No. 1:09-cr-143, 2019 WL 2537435, at *6 (W.D. Mich. June 20, 2019) (stating that the First Step Act "permits the Court to exercise the full range of its discretion consistent with the Section 3553(a) factors"); *Pepper v. United States*, 562 U.S. 476, 490 (2011) (stating that, in a resentencing on remand, "a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range"); *Hegwood*, 934 F.3d 414, 416 (5th Cir. 2019) (noting that a PSR addendum for the district court's First Step Act proceeding "recounted [the defendant's] post-sentencing conduct"); *United States v. Larry*, 632 F.3d 933, 936 (5th Cir. 2011) (applying *Pepper* in the context of a § 3582(c)(2) sentence reduction proceeding and stating that the district court may consider a defendant's post-sentencing conduct in deciding whether a sentence modification is warranted).

[10] Flowers was held accountable for a total of 141.75 grams of cocaine base, which corresponds to base offense level of 26. *See* U.S.S.G. § 2D1.1(c)(7). Following the 3-point reduction for acceptance of responsibility, *see* PSR at ¶¶ 91 and 94, Flowers' total offense level is 23. Combined with his criminal history category of V, the resulting Guidelines range under the Sentencing Table is 84 to 105 months, restricted to 120 months for Count 1 due to the statutory minimum.

In a 2016 report to Congress, the U.S. Sentencing Commission advised that "[d]rug trafficking only career offenders . . . should not categorically be subject to the significant increases in penalties required by the career offender directive" because they "are not meaningfully different from other federal drug trafficking offenders[.]"[11] The report described the results of a multi-year study in which the Commission explored concerns that "the career offender directive fails to meaningfully distinguish among career offenders with different types of criminal records and has resulted in overly severe penalties for some offenders."[12] Specifically, the Commission analyzed criminal history and recidivism data for career offenders, separating the results based on whether the person's prior convictions were drug trafficking offenses, crimes of violence, or both. The data revealed "clear and notable differences between career offenders who have committed a violent offense and those who are deemed career offenders based solely on drug trafficking offenses."[13] For example, "drug trafficking only career offenders" proved to have lower recidivism rates than other career offenders, with rates that actually were "relatively similar" to those of *non*-career offenders.[14]

The Commission's study led it to conclude that "the career offender directive is best focused on those offenders who have committed at least one 'crime of violence.'"[15] The

---

[11] *See* U.S. Sentencing Comm'n, Report to the Congress: Career Offender Sentencing Enhancements, at 3 (Aug. 2016), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf ("USSC COG Report").
[12] *Id.* at 2.
[13] *Id.* at 8.
[14] *Id.* at 40-41.
[15] *Id.* at 3.

Case 2:08-cr-00188-NJB-SS   Document 840   Filed 02/27/20   Page 6 of 15

Commission also recommended "that Congress amend the directive to reflect this principle by *no longer including* those who currently qualify as career offenders based solely on drug trafficking offenses."[16] According to the Commission, "[t]hese reforms would help ensure that federal sentences better account for the severity of the offenders' prior records, protect the public, and avoid undue severity for certain less culpable offenders."[17]

The Commission also noted the disproportionate way in which the Career Offender Guideline affects people convicted of federal drug trafficking offenses, due to the "higher statutory maximum penalties for those offenders."[18] Jason Flowers' case is a clear example of that disproportionate impact. Indeed, his prior drug convictions (1) enhance his statutory minimum from 5 to 10 years and his maximum from 40 years to life, (2) qualify him for an enhanced sentence under the Career Offender Guideline, and (3) enhance his career offender offense level from 34 to 37 due to his enhanced statutory maximum.

The Sentencing Commission is not alone in recognizing the ways in which the Career Offender Guideline is overly punitive toward drug offenders. The Commission determined through its study that "[d]rug trafficking only career offenders were most likely

---

[16] *Id*. (emphasis added).
[17] *Id.* Although Congress has not implemented such a reform yet, the Commission identified the continuation of those efforts as a priority in its most recent amendment cycle. *See* Federal Register Notice (83 FR 30477): Proposed Priorities for Amendment Cycle, Request for Comment, U.S. Sentencing Commission, pp. 2-3 (Aug. 28, 2019), https://www.ussc.gov/sites/default/files/pdf/amendment-process/federal-register-notices/20180628_fr_proposed_priorities.pdf ("Continuation of its work with Congress and others to implement the recommendations of the Commission's 2016 report to Congress, Career Offender Sentencing Enhancements, including its recommendations to revise the career offender directive at 28 U.S.C. § 994(h) to focus on offenders who have committed at least one 'crime of violence'").
[18] USSC COG Report at 8.

6

to receive a sentence below the guideline range[.]" The average sentence for such offenders was 134 months, which is "nearly identical to the average guideline minimum (131 months) that would have applied to those offenders through the normal operation of the guidelines."[19] Moreover, over the last few years, district courts around the country have been acknowledging this issue—and the Commission's data—and applying downward variances under circumstances similar to Flowers' case, in an effort to avoid the "unwarranted sentencing *uniformity*" that the Guideline currently creates.[20] In fact, in another First Step Act proceeding in this district, the district court judge relied in part on this Sentencing Commission data in finding that a downward variance from the Career Offender Guideline range was appropriate.[21]

As the Supreme Court has recognized, district courts "may freely depart from the range recommended by the Guidelines based not only on an individualized determination that the Guidelines yield an excessive sentence in a particular case, but also based on policy disagreement with the Guidelines themselves."[22] Here, a downward variance toward

---

[19] *Id.* at 3.

[20] *See United States v. Dixon*, No. 2:16-cr-16-MHT, 2016 WL 4492843, at *3 (M.D. Ala. Aug. 5, 2016); *see also, e.g.*, *United States v. Newhouse*, 919 F. Supp. 2d 955, 967-68, 992 (N.D. Iowa 2013) ("join[ing] the growing chorus of federal judges who have rejected applying the Career Offender guideline in certain cases" and rejecting its application to a "nonviolent, recidivist drug addict occupying a low-level role in the drug trade") (citing cases); *United States v. Valdez*, 77 F. Supp. 3d 1115, 1134 (D.N.M. 2014) (varying downward from the Career Offender Guideline range by nearly 50% because its application did not comply with § 3553(a), in a case where the defendant's conviction and predicate offenses were drug offenses and he had no violent crime in his criminal history).

[21] *See* Order and Reasons, *United States v. Shannon Mitchell*, No. 07-CR-040, ECF No. 71, at 10-13 (E.D. La. Nov. 14, 2019) (Fallon, J.) (reducing sentence for career offender who faced Guidelines range of 262-327 months to time-served after the defendant had served 13 years).

[22] *Peugh v. United States*, 569 U.S. 530, 552 (2013) (Thomas, J., dissenting); *see also Pepper*, 562 U.S. at 501 (stating that the Court's post-*Booker* decisions "make clear that a district court may in

7

Flowers' non-career offender Guidelines—*i.e.*, his statutory minimum of 120 months—is warranted for both reasons: first, because the Sentencing Commission's data-based guidance indicates that the Career Offender Guideline categorically over-penalizes people like Jason Flowers, and second, because the data underlying the Commission's recommendations demonstrate that application of the career offender enhancement yielded an excessive sentence in his specific case. The defendant does not have *any* convictions for "crimes of violence." Yet he faces the same Guidelines range that applies to people who have been convicted of violent crimes. Accordingly, Flowers respectfully requests that the Court reduce his sentence toward the mandatory minimum sentence of 120 months or "time served," given that he has already served over 11 years of his sentence.

> B. The Defendant's post-sentence prison infractions are non-violent and have been addressed administratively by sanctions from the Bureau of Prisons.

The Government's other basis for opposing a sentence reduction in this case is the defendant's post-sentencing conduct. The Government however does acknowledge that none of the defendant's infractions involves violence of any kind.[23] In fact, his most recent infraction involved eating chicken when he did not work on the short line. It is difficult to contemplate that infractions of this sort should form the basis for the denial of a sentence

---

appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views"); *Spears v. United States*, 555 U.S. 261, 264 (2009) (holding that district courts "are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines"); *United States v. Merced*, 603 F.3d 203, 218 (3d Cir. 2010) ("The government concedes that a sentencing court may vary downward from the Guidelines range generated by the career offender provision based solely on a policy disagreement with the scope of that provision.").

[23] *See* Gov't Memo at 7.

8

reduction, particularly since each infraction was already punished administratively by the Bureau of Prisons through the loss of either good time credit (a total of 123 days) or other privileges.[24]

The Government rightly acknowledges that Flowers has participated in numerous courses to prepare for his eventual release. These efforts at rehabilitation provide additional, significant grounds for a sentence reduction.[25] The Inmate Education Data Transcript and Inmate Profile reflects that Flowers has completed drug education and completed his financial responsibilities by paying his assessments while incarcerated. Flowers has completed courses to earn his commercial driver's license when released and has taken several business courses including career planning, dressing for success, from prison to paycheck, buying a car, and financial planning. He has also taken classes for personal improvement including anger management, victim impact, relapse prevention, recovery maintenance, and responsible thinking. He has even completed courses on crocheting, drawing, and aerobics. Importantly, Flowers has also taken classes in positive parenting and being an "inside out dad" to prepare for his family responsibilities once he leaves prison. Flowers advised that it has been difficult to visit with his children due to

---

[24] *See* "Inmate Education Data Transcript" and "Inmate Discipline Data." These documents are included in the "Sentry Report" that U.S. Probation provided to the Court as part of Flowers' screening packet.

[25] *Pepper v. United States*, 562 U.S. 476, 490 (2011) (stating that, in a resentencing on remand, "a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range").

travel costs, given his current location in Texas. However, he noted that he still maintains contact by phone and mail with his children now ages 21, 19, 15, and 11.

### C. Sentencing Commission data related to age and recidivism rates also supports a sentence reduction for Jason Flowers.

In December 2017, the Sentencing Commission published another report describing the results of decades of research on recidivism data for federal offenders, focusing specifically on "the relationship between age at release and recidivism" and "examin[ing] the impact of the aging process on federal offender recidivism[.]"[26] That study found that "age is generally a strong factor influencing the likelihood of committing crime" and illustrated a significant drop in recidivism between individuals in their late 20s and those in their late 30s or 40s.[27] In particular, the study showed that individuals under 30 have a re-arrest rate of 64.8%, whereas individuals in their 30s and 40s have re-arrest rates of 53.6% and 43.2%, respectively.[28] Based on all of the data collected and analyzed through this study, the Commission concluded that "older offenders are substantially less likely to recidivate following release compared to younger cohorts" and that "as age increases recidivism by any measure declined."[29] The Commission also concluded that "[o]lder

---

[26] *See* U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, at 2 (Dec. 2017), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pd.
[27] *Id.* at 11, 14-16.
[28] *Id.* at 22-23.
[29] *Id.* at 30.

offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average."[30]

This recidivism data is unsurprising given the results of research that has been conducted on brain development and age. Studies have shown that "the brain undergoes dramatic changes" from puberty "into the mid-twenties," making younger people "highly vulnerable" but also "giv[ing] them a tremendous capacity to change."[31] Social experiments, brain-imaging studies, and postmortem examinations have all supported the conclusion that "[b]rain areas involved in reasoning and self-control, such as the prefrontal cortex, are not fully developed until the mid-20s—a far later age than previously thought."[32] For many people, the changes and developments that occur in their early-to-mid-20s include ending "their involvement in delinquent or criminal behavior" and "learn[ing] to make responsible choices," either "as a natural consequence of brain development shaped by learning and experience" or in response "to various kinds of interventions."[33]

Notably, courts around the country have considered and relied upon the Sentencing Commission's 2017 report on age and recidivism in imposing sentence reductions under Section 404 of the First Step Act. For example, in *United States v. Patterson*, a district

---

[30] *Id.*

[31] *See* MacArthur Foundation, "Juvenile Justice in a Developmental Framework: A 2015 Status Report," at 11, https://www.macfound.org/media/files/MacArthur_Foundation_2015_Status_Report.pdf.

[32] Requarth, Tim, "Neuroscience is Changing the Debate Over What Role Age Should Play in the Courts," Newsweek (Apr. 18, 2016) *available at* https://www.newsweek.com/2016/04/29/young-brains-neuroscience-juvenile-inmates-criminal-justice-449000.html (emphasis added).

[33] MacArthur Foundation, *supra* note 69, at 11.

court reduced a sentence below the applicable Guidelines range after noting that "[r]esearch conducted by the United States Sentencing Commission establishes a general inverse correlation between age and criminality."[34] The court cited data showing that the likelihood of re-arrest for the 40-year-old defendant in that case "will have decreased by approximately 20%" compared to his age when he was arrested for the offense.[35] Other courts have similarly considered this data in determining that a sentence reduction is appropriate.[36]

The defendant, Jason Flowers, respectfully urges that a sentence reduction is appropriate in his case based on the totality of the circumstances, including the lowered likelihood of recidivism in light of his age and personal growth.

---

[34] No. 1:08-CR-383, 2019 WL 7290436, at *3-4 (M.D. Penn. Dec. 30, 2019).
[35] *Id.*
[36] *See, e.g.*, *United States v. Clarke*, No. 4:92-cr-4013, 2019 WL 7498752, at *3-4 (N.D. Fla. Sept. 11, 2019) (reducing sentence to time-served and noting that the defendant, at 47-years-old, "is currently at an age at which recidivism rates decline substantially"); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *11 (M.D.N.C. June 28, 2019) (noting that the defendant's age of 47 and other factors "make recidivism unlikely").

### IV.     Conclusion.

Courts are required to impose prison sentences that are sufficient but not greater than necessary to comply with the sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation.[37] Viewing his entire record, it is clear that Jason Flowers does not need to be incarcerated for another 9 years of his life, into his 50s, to achieve those goals. He is a non-violent offender who has taken numerous courses to prepare for his eventual release. He has never had a single prison infraction for an act of violence in over 11 years of federal incarceration. It is difficult to conceive how keeping Flowers incarcerated for another 9 years would benefit him, any other person, or society as a whole.

A sentence reduction toward the statutory mandatory minimum of 120 months or "time served" as to Count 1, would allow him to reenter society in his 40s. Flowers has clearly learned from his past mistakes and has committed to genuine transformation, and a sentence reduction is therefore appropriate based on the totality of the circumstances and full consideration of the § 3553(a) factors in this case.

---

[37] *See* § 3553(a)(2).

**WHEREFORE**, for the foregoing reasons, Jason Flowers respectfully requests that the Court reduce his sentence toward the statutory mandatory minimum of 120 months or "time served" as to Count 1, or to any other reduced sentence that this Court deems appropriate. He also respectfully requests that his term of supervised release on Count 1 be reduced to 8 years, consistent with the revised statutory minimum for this offense.

Respectfully submitted this 27th day of February, 2020.

CLAUDE J. KELLY
Federal Public Defender


/s/ Gary V. Schwabe, Jr.
GARY V. SCHWABE, JR.
First Assistant Federal Public Defender
Hale Boggs Federal Building
500 Poydras Street, Suite 318
New Orleans, Louisiana  70130
Telephone:  (504) 589-7933
gary_schwabe@fd.org
Louisiana Bar Roll No. 19780

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 27, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Kevin Boitmann, Assistant United States Attorney, 650 Poydras Street, New Orleans, Louisiana 70130.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

    /s/ Gary V. Schwabe, Jr.
    GARY V. SCHWABE, JR.
    First Assistant Federal Public Defender